IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO – at Cincinnati

**ROBERT MORRISON**
    c/o Christopher Wiest, Esq.    :
    25 Town Center Blvd, Ste. 104
    **Crestview Hills, KY 41017**       :

    **Plaintiff**                                     :

**v.**                                                          :

**THE E.W. SCRIPPS COMPANY**    :
    c/o Corporation Service Company
    **3366 Riverside Drive, Suite 103**    :
    **Upper Arlington, OH 43221**
                                                  :

    **Defendant**

**PLAINTIFF'S COMPLAINT FOR MONEY DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF WITH JURY DEMAND ENDORED HEREON**

Plaintiff, through Counsel, for his Complaint, states and alleges as follows:

## Introduction

1. This lawsuit stems from Defendant's illegal termination of the Plaintiff on December 3, 2021, after it refused to provide Mr. Morrison, a remote employee, a religious exemption from its COVID-19 vaccine mandate.

## Parties

2. Plaintiff Robert Morrison ("Morrison") is, and at all times relevant hereto has been a resident of Kentucky.

3. Defendant The E.W. Scripps Company ("Scripps") is a Ohio domiciled corporation, with its principal place of business at 312 Walnut Street, Suite 2800, Cincinnati, Ohio, 45202. At all times relevant hereto, Scripps employed more than 500 persons.

**Jurisdiction and Venue**

4. Subject matter jurisdiction over the federal claims and causes of action asserted by the Plaintiff in this action is conferred on this Court pursuant to 28 U.S.C. §1331, 42 U.S.C. § 2000e-5, 28 U.S.C. §1332, 28 U.S.C. §1367, and other applicable law.

5. This Court has personal jurisdiction over Defendant because it is a domiciliary of Ohio and this judicial district.

6. Venue is proper in this District and Division under 28 U.S.C. 1391(b)(1) and (2) in that the Defendant resides in, and the facts giving rise to this matter arose in, the Southern District of Ohio and the Cincinnati Division.

**Facts**

7. Plaintiff Robert Morrison was employed as an Applications Architect with Scripps, at all times relevant hereto.

8. As an Applications Architect, Mr. Morrison's duties included computing solutions for the company. The position is and was an informational technology position, fully capable of remote work, and (i) almost all of Mr. Morrison's work was telework from the inception of the position; (ii) for the duration of the COVID-19 pandemic, Mr. Morrison's work was, in fact, telework, with meetings conducted by Zoom, as necessary; and (iii) interactions with other employees in person was not necessary to the performance of his duties.

9. On or about September 9, 2021, Scripps created a mandate requiring employees to receive vaccination for COVID-19, which Mr. Morrison discovered on September 13, 2021 when he first discovered notice of it and he received an company-wide email from

Scripps about it. Any such accommodation requests had to be submitted on a very short timeframe: by September 16, 2021.

10. On September 13, 2021, at 1:54 p.m., Mr. Morrison requested information on the accommodation process through an email to human resources and was provided a copy of a form that Scripps required employees seeking an exemption/accommodation to fill out. A few hours later, at 3:56 p.m., he was asked whether he was going to pursue a religious or medical exemption. And, demonstrating the importance of the issue to him and the sincerity of his religious beliefs, three minutes later, at 3:59 p.m., he reported he was seeking a religious exemption.

11. A few days later, on September 16, 2021, Mr. Morrison timely applied for a religious exemption via the form and process required by Scripps. That form, as reflected in **Exhibit A**, directed employees to "complete, sign, and submit this form no later than 9/16/21," and that late submissions would not generally be accepted.

12. The form indicated that employees should "write below, or attach, a statement that explains in your own words why you are requesting this religious exemption. The statement should specifically describe the religious principles that guide your objection to vaccination." See Exhibit A.

13. The form indicated that "Scripps may require additional supporting information." And if such information was requested, the employee would be contacted.

14. And the form had an attestation clause, requiring certification of the truthfulness of the information contained in the submission, threatening significant consequences, including termination, for untruthful statements, and acknowledging that other mitigation measures may be implemented if the request was approved.

15. Mr. Morrison signed and completed the form, attached as **Exhibit A**, and attached a letter from him and his pastor, on church letterhead, indicating that the letter was from Mr. Morris, and that his pastor supported the exemption request, with statements such as:

> Each of the Covid vaccines that are now being offered, violate my deeply held, religious beliefs and spiritual truths by means of their use of aborted fetal tissue in the development of each of these vaccines.
>
> As an example of this process, each of these Covid vaccines were created from protein testing using the abortion-derived, cell line, HEK-293. To be vaccinated by these reprehensible, vaccines would be a criminal violation of my religious freedom and implicate myself in this horrid practice, and offend my precious faith, which is protected by The United States Constitution as well as International Law.

16. Mr. Morrison is deeply religious. In fact, his co-workers and managers within Scripps were well-aware of his deep and abiding religious beliefs, sometimes apologizing when using foul language in his presence. To that end, he has had extensive involvement in his church.

17. Mr. Morrison had sincerely held religious beliefs regarding vaccination and vaccines with any ties to abortion. He met with his pastor prior to submission of his religious accommodation request with Scripps, explaining that he needed to document his religious beliefs. His pastor explained that many members of the congregation had similar beliefs, and gave Mr. Morrison a letter that Mr. Morrison and the pastor signed, indicating that it was supported by both of them.

18. Mr. Morrison possessed, and still possesses sincerely held religious beliefs that prevented him from receiving the available COVID-19 vaccines due to their connection with abortion (and fetal cell lines) in 2021. All such COVID-19 vaccines were either produced or manufactured with fetal cell lines (J&J) or had confirmation testing performed with these cell lines (Pfizer and Moderna) and Mr. Morrison could not receive

4

them consistent with his beliefs. Any request to inject these illicit substances into his body violated his sincerely held beliefs.

19. Demonstrating the sincerity of his religious beliefs, Mr. Morrison was ultimately terminated so he could maintain his religious integrity.

20. On October 14, 2021, Scripps denied Mr. Morrison's requested religious accommodation. With absolutely no evidence to support their determination and having failed to even interview Mr. Morrison about his beliefs -- and contrary to the un-rebutted statements made by Mr. Morrison and his pastor, they determined that: "Your request has been denied for the following reason(s): The information provided does not demonstrate that the religious belief asserted supports being unable to get the vaccine or that the belief is 'sincerely held,' as required by law."

21. In other words, Scripps had the audacity to question Mr. Morrison's sincerely held religious beliefs. Again, Scripps did not interview Mr. Morrison about his beliefs, or request any follow-up information from him, before coming to this *pro forma* and baseless decision.

22. On October 21, 2021, Mr. Morrison asked for follow-up information from Scripps on how they reached their decision.

23. When meaningful information was not forthcoming, Mr. Morrison followed up again on October 27, 2021, with yet another email to Scripps/the H.R. representative, that pointed out the following: "I have been remote full time for nineteen months now and can continue to do so without issue. If there is a need to come to the office, I can submit to temperature testing, routine hand-washing, or other measures currently approved by medical professionals for preventing the spread of COVID. Also, I have had COVID,

recovered, and have tested positive for antibodies." That email references the fact that Mr. Morrison had previously had COVID-19, and had documentation with anti-bodies, as well as the nature of his remote work.

24. On October 29, 2021, the H.R. representative again sent Mr. Morrison an email, noting that: "I have received a notification from the Review Committee and the original decision of denial still stands."

25. On November 12, 2021, Mr. Morrison again emailed human resources, indicated that there was no detail provided about the process, that the process was not interactive as Scripps had informed Mr. Morrison it would be prior to the submittal, and Mr. Morrison thereby expressed that he did not believe that Scripps had acted lawfully; and then, accepting that they may be planning to terminate him, asked questions about the expected termination.

26. If there were open questions by Scripps about the sincerity of Mr. Morrison's religious beliefs, it was readily apparent to Scripps that by the time of his email on November 12, 2021, Mr. Morrison was prepared to be terminated, rather than succumb to the mandate that violated his sincerely held religious beliefs.

27. Before terminating Mr. Morrison, Scripps had actual and/or constructive knowledge through its business records that its vaccinated employees were contracting COVID-19 at similar and likely higher rates during the relevant timeframes than unvaccinated employees who, like Mr. Morrison, possessed natural immunity.

28. Before terminating Mr. Morrison, Scripps had actual and/or constructive knowledge that the mandated vaccines were neither safe nor effective by any objective standard. Yet, with

this knowledge, Scripps nonetheless attempted to force Mr. Morrison to violate his sincerely held religious convictions as a condition of continued employment.

29. Scripp's systematic refusal to recognize natural immunity—which has been established through hundreds of years of scientific research as providing stronger and more robust protection than vaccine-elicited immunity—forced Mr. Morrison without credible justification to choose between his religious beliefs and feeding his family.

30. Instead of accommodating Mr. Morrison's sincerely held religious beliefs, which could have been accomplished through simply incorporating the scientific reality of natural immunity into its business practices, and which would have cost the company nothing whatsoever, Scripps terminated Mr. Morrison on December 3, 2021 for not complying with their vaccine mandate after denying his accommodation request.

31. This termination was also motivated by Mr. Morrison's questioning of the Scripps sham religious accommodation process, prompting the charges herein for retaliation.

32. Before the EEOC, the company continued to question the sincerity of Mr. Morrison's religious beliefs, because allegedly, "it appeared that his letter was a form letter provided by his church, rather than a description of his beliefs submitted in his own words as the instructions required."

33. Rather than manufacture this after-the-fact sham explanation of its sham process, of course, Scripps could have simply asked Mr. Morrison about any concerns they actually had, prior to denying his request, but it did not do so, demonstrating its conscious wrongdoing and the pretextual nature of their later position.

34. Scripps likewise disingenuously contended that "there was no information personal to Mr. Morrison in the letter, which again implied it was a form letter," even though Mr.

Morrison signed it, it was written in the first person about Mr. Morrison, and it was signed by him and his pastor.

35. And Scripps attempted to split hairs before the EEOC about Mr. Morrison's statement that aborted fetal tissue was used in the development of the vaccines because "[f]etal tissues and fetal cell lines are not the same thing," allegedly Johnson & Johnson used the cell lines in development, while the other two manufacturers used the cell lines in testing.

36. In actuality, and as Mr. Morrison contended, the cell lines were used *to develop* each of the vaccines, whether in the manufacturing phase, or the testing phase, as Scripps ultimately admitted. And the continuation and propagation of aborted fetal tissue through cell line propagation is considered by religious adherents, such as Mr. Morrison, to be continued use of aborted fetal tissue.

37. Scripps likewise indicated that Mr. Morrison did not state, in his request, "whether their objection applied to other vaccines, or just to COVID-19."

38. But, and again, and giving the game away that this was not the actual reason for the denial, Scripps never interviewed Mr. Morrison to ask him about this, despite the fact that it could have done so in under five minutes.

39. At bottom, Scripps, its attorneys responding to the EEOC, and, if the request was actually reviewed, those reviewing Mr. Morrison's accommodation request were simply hostile to his religious beliefs.

40. There was no burden, undue or otherwise, towards Scripps accommodating Mr. Morrison's sincerely held religious beliefs, because, among other reasons; (i) his position was handled remotely throughout the COVID-19 pandemic and could have continued to be handled remotely; (ii) mitigation measures could have been implemented; (iii) Mr.

Morrison explained to Scripps, and had documentation available, that he was previously infected and had prior natural immunity, which is just as, if not more effective than vaccine-derived immunity;[1] (iv) available COVID-19 vaccines did not provide, and never provided, immunity from transmission, and at best constituted a therapeutic that might help to mitigate the severity of the disease, but was less effective than natural immunity from prior infection, particularly for the Johnson &Johnson vaccine, which Scripps accepted.

41. Mr. Morrison filed a charge of discrimination on March 31, 2022, a true and accurate copy of which is attached as **Exhibit B**. The charge was filed, per work sharing agreement, with the Ohio Civil Rights Commission on that same date.

42. On May 4, 2023, the EEOC issued a right to sue, which was received on May 5, 2023. A true and accurate copy of that document is attached as **Exhibit C**.

### COUNT I – 42 USC 2000e-2 (religious discrimination)

43. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

44. Scripps is and was, at all times relevant hereto, an "employer," as that term is defined in 42 U.S.C. § 2000e(b), because it had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

45. Mr. Morrison was, at all times relevant hereto, an "employee," as that term is defined in 42 U.S.C. § 2000e(f), because he was employed by Scripps, which was an "employer."

46. Mr. Morrison was qualified for his job positions and possessed a strong performance record.

---

[1] https://www.news-medical.net/news/20230504/COVID-19-risk-natural-infection-vs-vaccine-induced-immunity.aspx (last accessed 5/11/2023). Plaintiff will be presenting expert testimony on this and other points in this paragraph.

47. "Religion" is defined in 42 U.S.C. § 2000e(j) as "include[ing] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

48. Further, 42 U.S.C. § 2000e-2(a) prohibits an "employer" from "discharge[ing] any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion…"

49. Moreover, 42 U.S.C. § 2000e-2(m) provides that "an unlawful employment practice is established when the complaining party demonstrates that … religion… was a motivating factor for any employment practice, even though other factors also motivated the practice."

50. Scripps, as an employer, violated 42 U.S.C. § 2000e-2(a), when it engaged in intentional discrimination against Mr. Morrison by discharging Mr. Morrison on December 3, 2021 due to its unwillingness to accommodate his sincerely held religious beliefs, and further violated that section prior to that date when it failed to accommodate his sincerely held religious beliefs.

51. By any objective measure, as evidenced by his strong performance record, Mr. Morrison was a valued and productive employee. The Supreme Court has reiterated on several occasions that otherwise illogical employment decisions frequently give rise to an inference of discriminatory animus. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (in justifying the presumption of intentional discrimination in Title VII cases

"that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for [an adverse employment action] have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration. . . .").

52. In short, Mr. Morrison suffered adverse employment action because of his religious beliefs.

53. The foregoing conduct constitutes illegal, intentional discrimination prohibited under 42 U.S.C. § 2000e-2 *et seq.*

54. As a direct and proximate result of Scripp's religious discrimination, Mr. Morrison is suffering the injuries and damages hereinafter described.

55. Scripps' termination of Mr. Morrison, and handling of Mr. Morrison's religious accommodation request, demonstrated malice and/or reckless indifference to the federally protected rights of employees, warranting the imposition of punitive damages.

56. Mr. Morrison therefore seeks relief, pursuant to 42 U.S.C. § 2000e-5(f)(g), and (k), and 42 U.S.C. § 1981a, including relief for economic and non-economic compensatory damages and injunctive equitable relief. Specifically, Mr. Morrison seeks back pay, interest on backpay, and the value of back benefits, all through the date of trial; attorney fees to be determined by the lodestar method and calculated under prevailing *Rubin* rates; and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and punitive damages. All of the foregoing were actually and proximately caused by Scripps's violations of 42 U.S.C. 2000e-2.

## COUNT II – 42 USC 2000e-3 (retaliation)

57. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

58. Mr. Morrison opposed a practice made illegal under 42 U.S.C. 2000e-2, when he challenged and opposed the mishandling of his religious exemption request on November 12, 2021.

59. Scripps discriminated against Mr. Morrison, in contravention of 2 U.S.C. 2000e-3, when it terminated Mr. Morrison on December 3, 2021, just a few weeks after he sent the November 12, 2021 email that challenged and opposed Scripps handling of his religious accommodation request.

60. As a direct and proximate result of Scripp's retaliation against Mr. Morrison for engaging in protected activity, Mr. Morrison is suffering the injuries and damages hereinafter described.

61. Scripps' termination of Mr. Morrison's employment immediately after he objected to how Scripps' handled his religious accommodation request demonstrated malice and/or reckless indifference to the federally protected rights of employees, warranting the imposition of punitive damages.

62. Mr. Morrison therefore seeks relief, pursuant to 42 U.S.C. § 2000e-5(f)(g), and (k), and 42 U.S.C. § 1981a, including relief for economic and non-economic compensatory damages and injunctive equitable relief. Specifically, Mr. Morrison seeks back pay, interest on backpay, and the value of back benefits, all through the date of trial; attorney fees to be determined by the lodestar method and calculated under prevailing *Rubin* rates; and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and punitive damages. All of the foregoing were actually and proximately caused by Scripps' violations of 42 U.S.C. 2000e-3.

**COUNT III – R.C. 4112.01, et. seq. (religious discrimination/retaliation)**

63. Plaintiff reincorporates the preceding paragraphs as if fully written herein.

64. Scripps is, and was, at all times relevant hereto, an "employer" within the meaning and import of Ohio Revised Code ("R.C.") 4112.01(2), because it was a "person," which includes a company or corporation, employing four or more persons.

65. Mr. Morrison was, at all times relevant hereto, an "employee" within the meaning and import of R.C. 4112.01(3) because he was employed by Scripps.

66. Scripps violated R.C. 4112.02(A) when it discharged Mr. Morrison without just cause on December 3, 2021, and because of his religion and the failure by Scripps to accommodate same.

67. Scripps violated R.C. 4112.02(I) when it discharged Mr. Morrison without just cause on December 3, 2021, after he opposed and challenged Scripps illegal failure to accommodate his religious beliefs.

68. Mr. Morrison brings an action pursuant to R.C. 4112.052 for the violations by Scripps of R.C. 4112.02(B) and (I), and has satisfied all prerequisites required by that section because he filed timely charges with the equal opportunity employment commission, which also had the effect of constituting a timely charge with the Ohio Civil Rights commission, and this action has been brought within the time period required under the 90-day right to sue notice.

69. Mr. Morrison therefore seeks relief, pursuant to R.C. 4112.052, including relief for economic damages proximately and actually caused by the foregoing, to include back pay, interest on backpay, and the value of back benefits, all through the date of trial, as

well as future lost wages; non-economic damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life.

70. Scripps actions herein demonstrate malice or aggravated or egregious fraud (including due to its pretextual and absurd contentions in defense of its illegal firing before the EEOC), and Scripps knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate, thus warranting punitive damages.

71. Mr. Morrison seeks punitive damages in an amount to be determined by the jury at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as prayed for, including:

A. That Plaintiff be awarded money damages, including both compensatory and punitive damages against the Defendants, in an amount to be proven at trial, and exceeding $75,000.00, exclusive of interest and costs;

B. That trial by jury be had on all issues so triable;

C. That Plaintiff be awarded their costs in this action, including reasonable attorney fees;

D. That Plaintiff be awarded injunctive and equitable relief against the Defendant, as this Court may find just and proper; and

E. Such other relief as this Court shall deem just and proper.

## Jury Demand

Plaintiff demands trial by jury for any and all claims so triable under FRCP 38.

/s/ Christopher Wiest_____

Respectfully submitted,

/s/ Christopher Wiest_____
Christopher Wiest (Ohio 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
chris@cwiestlaw.com

Walker Moller*
SIRI | GLIMSTAD LLP
1005 Congress Avenue, Suite 925-C36
Austin, TX 78701
Main: 512-265-5622
Facsimile: 646-417-5967
wmoller@sirillp.com

Jack Spitz*
SIRI | GLIMSTAD LLP
8 Campus Drive, Suite 105 PMB#161
Parsippany, New Jersey 07054
Main: 212-532-1091
Facsimile: 646-417-5967

* Pro hac vice forthcoming

*Counsel for Plaintiffs*