UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Robert Morrison, | ) |
| Plaintiff, | ) Case No.: 1:23-cv-00279 |
| vs. | ) Judge Michael R. Barrett |
| The E.W. Scripps Company, | ) |
| Defendant. | ) |

**OPINION & ORDER**

This matter is before the Court on Defendant The E.W. Scripps Company's (Rule) 12(b)(6) Motion to Dismiss (Doc. 34) Plaintiff's Second Amended Complaint (Doc. 32). Plaintiff has filed a memorandum in opposition (Doc. 36), to which Defendant has replied (Doc. 38). Plaintiff also has filed two notices of supplemental authority. (Docs. 39, 40). As explained below, Defendant's motion will be GRANTED in part.

**I.  Summary of Facts Alleged in the Second Amended Complaint**[1]

Plaintiff Robert Morrison ("Morrison") was employed by The E.W. Scripps Company ("Scripps") as an Applications Architect. (Doc. 32 ¶ 24). This position "is and was an informational technology position, fully capable of remote work[.]" (*Id.* ¶ 25). Morrison teleworked *nearly* all of the time pre-COVID and *all* of the time during the pandemic itself. In-person interactions with other Scripps employees was "not necessary" to the performance of Morrison's duties. (*Id.*).

---

[1] The Court accepts as true all non-conclusory allegations in this recitation of the facts. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

1

On September 9, 2021, Scripps created a mandate that all employees be vaccinate against COVID-19.  (*Id.* ¶ 26).  Requests for a religious (or medical) exemption from the mandate were due within a week (or, by September 16, 2021).  (*Id.*; *see id.* ¶ 33).  Morrison, who learned of the mandate in a company-wide email sent on September 13, 2021, timely submitted a request for an accommodation to Cecilia Parra, Director, HRBP Corporate.  (*Id.*; *see* Doc. 1-1).

The Scripps form advised employees that "[a] religious exemption may be granted if the individual has **sincerely held religious beliefs** which are contrary to the practice of vaccination."  (Doc. 1-1 PAGEID 18 (emphasis added)).  Also, "[e]xemptions may not be available if the exemption would create undue hardship for Scripps or pose a direct threat to the health or safety of others in the workplace."  (*Id.*).  Employees were instructed "to write below, or attach, a statement that explains in your own words why you are requesting this religious exemption.  The statement should specifically describe the religious principles that guide your objection to vaccination."  (*Id.*).  Employees also were asked to "indicate whether you are opposed to all vaccinations and if not, the religious basis that prohibits the COVID-19 vaccine."  (*Id.*).

Morrison chose to attach a letter.  It reads:

> I am writing this letter to declare an exception to any mandate of vaccine inoculation for Covid-19, by reason of conscience and Religious objections.
>
> Each of the Covid vaccines that are now being offered, violate my deeply held, religious beliefs and spiritual truths by means of their use of aborted fetal tissue in the development of each of these vaccines.
>
> As an example of this process, each of these Covid vaccines were created from protein testing using the abortion-derived, cell line, HEK-293.  To be vaccinated by these reprehensible, vaccines would

2

> be a criminal violation of my religious freedom and implicate myself in this horrid practice, and offend my precious faith, which is protected by The United States Constitution as well as International Law.
>
> I therefore request this reasonable accommodation of my beliefs, as I truly wish to continue to be a good employee and member of the team.

(*Id.* PAGEID 19). Morrison signed this letter, as did his Pastor, Cleddie Keith of Heritage Fellowship. (*Id.*).

Scripps denied Morrison's request for accommodation on October 14, 2021, because "[t]he information provided does not demonstrate that the religious belief asserted supports being unable to get the vaccine or that the belief is 'sincerely held,' as required by law." (Doc. 32 ¶ 48; Doc. 34-2). A week later, Morrison asked Scripps for "follow-up information" as to how it reached its decision. (Doc. 32 ¶ 53). Receiving no "meaningful" response, on October 27, 2021, Morrison sent another email (presumably to Parra) that stated:

> I have been remote full time for nineteen months now and can continue to do so without issue. If there is a need to come to the office, I can submit to temperature testing, routine hand-washing, or other measures currently approved by medical professionals for preventing the spread of COVID. Also, I have had COVID, recovered, and have tested positive for antibodies.

(*Id.* ¶ 54). Parra responded on October 29, 2021, reporting, "I have received a notification from the Review Committee and the original decision of denial still stands." (*Id.* ¶ 55). Morrison sent a final email (presumably to Parra) on November 12, 2021, complaining that no details had been provided to him about Scripps' decision-making process and that

the process was not "interactive" as Scripps had promised and as required by law. (*Id.* ¶ 56).

Scripps terminated Morrison on December 3, 2021. (*Id.* ¶ 61). This lawsuit eventually followed. Morrison sues for religious discrimination (failure to accommodate and disparate treatment) and retaliation under both federal and state[2] law.

## II. Standards of Law

**Rule 12(b)(6) standard.** Fed. R. Civ. P. 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Courts do not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is **plausible** on its face." *Id.* at 570 (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "If a plaintiff does not 'nudge[ ] the[ ] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed.'" *Sturgill v. Am. Red*

---

[2] "The Ohio Supreme Court has held that federal caselaw interpreting Title VII [religious discrimination claims] is generally applicable to cases involving violations of §4112." *Isensee v. Amplity, Inc.*, No. 3:22-cv-370, 2024 WL 2132419, at *3 (S.D. Ohio May 13, 2024) (Rose, J.) (citing *Ohio Civ. Rights Comm'n v. David Richard Ingram, D.C., Inc.*, 69 Ohio St.3d 89, 630 N.E.2d 669, 674 (1994) (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civ. Rights Comm'n*, 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (1981))); *Bloomfield v. Whirlpool Corp.*, 984 F. Supp. 2d 771, 782 n.5 (N.D. Ohio 2013) (religious discrimination) (citing *Plumbers & Steamfitters*). Thus, Morrison's federal and state claims rise or fall together. *See generally Yeager v. First Energy Generation Corp.*, 777 F.3d 362, 363 (6th Cir. 2015).

*Cross*, 114 F.4th 803, 807 (6th Cir. 2024) (quoting *Twombly*, 550 U.S. at 570).

**Title VII's prohibition against religious discrimination.** The Court borrows from the Sixth Circuit's very recent synopsis:

> Title VII prohibits an employer from "discharg[ing] any individual ... because of such individual's ... religion." 42 U.S.C. § 2000e-2(a)(1). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* §2000e(j). "The heart of the failure-to-accommodate claim is that an employer discharges (or otherwise discriminates against) an employee for failing a job-related requirement instead of abiding by its 'statutory obligation to make reasonable accommodation for the religious observances' of its employees." *Savel v. MetroHealth Sys.*, 96 F.4th 932, 943–44 (6th Cir. 2024) (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75, 97 (1977)).

*Sturgill,* 114 F.4th at 808.

"To establish a prima facie case of religious discrimination by failure to accommodate, a plaintiff must plead facts that, if believed, show (1) [ ]he holds a sincere religious belief that conflicts with an employment requirement, (2) [ ]he has informed the employer about the conflict, and (3) [ ]he was terminated because of the conflicting requirement." *Prida v. Option Care Enters., Inc.*, No. 5:23-cv-00905, 2023 WL 7003402, at *3 (N.D. Ohio Oct. 24, 2023) (citing *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007)), *appeal docketed*, No. 23-3936 (6th Cir. Nov. 20, 2023).[3] "The plaintiff raising a religious discrimination claim must further plead facts that, if believed, demonstrate it was the 'religious aspect of h[is] [conduct] that motivated h[is] employer's actions.'" *Id.* (citing *Pedreira v. Ky. Baptist Homes for Child., Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (quoting *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 627 (6th Cir. 2000))). "This is so

---

[3] Oral argument was heard in this matter on October 30, 2024.

regardless of whether the plaintiff frames h[is] claim as a discriminatory discharge or a failure to accommodate." *Id.* "Once a prima facie case is established, the burden shifts to the employer to demonstrate that accommodating the employee's belief imposes 'undue hardship' on the employer." *Id.* (citing *Groff v. DeJoy*, 600 U.S. 447, 454 (2023)).

The Court notes that the Sixth Circuit has "long differentiated between 'failure to accommodate' and 'disparate treatment' claims." *Sturgill*, 114 F.4th at 811 (citations omitted). A failure-to-accommodate claim is a type of disparate-treatment claim. *Id.* (citing *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 774–75 (2015)); *Savel v. MetroHealth Sys.*, 96 F.4th 932, 943 n.4 (6th Cir. 2024) (citing *Abercrombie & Fitch*). Thus, a disparate-treatment claim that is *independent* from an accommodation claim must be separately pled. *Id.* Plaintiff has done so here. (*See* Doc. 32 ¶¶ 75–100 & ¶¶ 101–131).

**Title VII's prohibition against retaliation.** A prima facie showing of Title VII retaliation requires a plaintiff to establish these four elements: (1) he engaged in protected activity, (2) his employer knew he did so, (3) he subsequently suffered an adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. *Kirkland v. City of Maryville, Tenn.*, 54 F.4th 901, 910 (6th Cir. 2022) (citing *Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 775 (6th Cir. 2018)). If he does so, the burden then shifts to his employer to articulate a "legitimate, nonretaliatory reason for the adverse action." *Id.* at 911 (citing *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 448 (6th Cir. 2020)). At that point, the burden returns to the plaintiff, who must demonstrate that the reason proffered was pretextual. *Id.* (citing *Kenney*).

"Under Title VII, protected activity 'can fall into two categories: participation and

6

opposition.'" *Stanley v. ExpressJet Airlines, Inc.*, 808 F. App'x 351, 357 (6th Cir. 2020) (quoting *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019)). "More specifically, protected activity means the employee either (1) opposed an employer's discriminatory activity or practice made unlawful by Title VII, or (2) testified, assisted, or participated in an investigation or proceeding under Title VII." *Id.* (citing 42 U.S.C. §2000e-3(a)).

### III. Analysis

**Morrison has pled facts sufficient to establish a "sincere religious belief" in support of both his failure-to-accommodate and disparate-treatment claims for religious discrimination (Counts I, II & IV).** In support of dismissal, Scripps contends that Morrison has failed to plead facts sufficient to establish a "sincere religious belief" necessary to support either a failure-to-accommodate or disparate-treatment claim for religious discrimination. Case law decided after the close of briefing, however, upends Scripps' argument.

In seeking a religious exemption to vaccination, Morrison tied his religious belief to the (purported) "use of aborted fetal tissue in the development of each of [the Covid-19] vaccines." (Doc. 1-1 PAGEID 19). He explained that, "[t]o be vaccinated by these reprehensible, vaccines would be a criminal violation of my religious freedom and implicate myself in this horrid practice, and offend my precious faith[.]" (*Id.*). The allegations set forth Morrison's operative complaint are consistent, replete with references to his deep-rooted conviction as to "the sanctity of human life" and his unflagging opposition to abortion. (*See, e.g.*, Doc. 32 ¶¶ 7, 10–15, 18–23, 30, 32, 35–37, 45, 46). Morrison also averred that religion "is a central and critical aspect" of his life, such that he "regularly prays about large and small life decisions, and has daily devotions, which

7

include[ ] scripture reading and contemplation of Bible passages and incorporation of those passages into his practical life." (*Id.* ¶ 28). "Scripps' vaccination mandate was a decision point that [ ] Morrison seamlessly placed under the umbrella of his established and regular religious practices." (*Id.*). "[T]he Holy Spirit" convinced[4] Morrison "against receipt of the mandated vaccines." (*Id.* ¶ 31).

These allegations "[p]lainly" support an inference that Morrison's refusal to be vaccinated was an "aspect" of his "religious observance" or "practice" or "belief." *Lucky v. Landmark Med. of Mich.*, P.C., 103 F.4th 1241, 1243 (6th Cir. 2024) (citing 42 U.S.C. § 2000e(j)). Like the plaintiff in *Lucky*, Morrison alleged that he prayed, received an answer, and acted accordingly. *See id.* In the Sixth Circuit's view, allegations along these lines, at least at the pleading stage, are "almost self-evidently enough to establish" that a plaintiff's refusal to be vaccinated was an "aspect" of his "religious observance" or "practice" or "belief." *See id.*; *Sturgill*, 114 F.4th at 808 (applying *Lucky*, it was enough at the pleading stage that the plaintiff alleged "she prayed about whether to take the COVID-19 vaccine and concluded that not taking it would 'honor God and the temple he gave [her]'"; *Harvey v. Blue Cross Blue Shield of Mich.*, No. 2:23-CV-11961-TGB-CI, 2024 WL 4235475, at *3–4 (E.D. Mich. Sept. 19, 2024) (applying *Lucky* and *Sturgill*); *Dickhudt v. COBX Co.*, No. 2:23-CV-12838-TGB-DRG, 2024 WL 4235470, at *3–5 (E.D. Mich. Sept. 19, 2024) (also applying *Lucky* and *Sturgill* and noting the plaintiff's allegation that "she opposes abortion for religious reasons," that "COVID-19 vaccines use a historic fetal cell line in production and manufacturing," and that she "believes that by receiving the COVID-

---

[4] For purposes of deciding Scripps' motion, the Court will presume that inclusion of the word "convicted" was a scrivener's error on the part of Morrison's counsel.

8

19 vaccine she would be complicit in the sinful act of murder[ ]")[5]; *Eder v. Blue Cross Blue Shield of Mich.*, No. 23-12024, 2024 WL 4132669, at *1–4 (E.D. Mich. Sept. 10, 2024) (same as *Dickhudt*).

In support of dismissal, Scripps also contends that Morrison has included in his operative complaint allegations that detail *medical* rather than religious objections. (Doc. 32 *e.g.*, ¶ 54 ("Mr. Morrison had previously had COVID-19, and had documentation with anti-bodies [that] demonstrated natural immunity[.]")). Scripps forgets, however, that the Court "must take care to read the complaint's allegation 'as a whole.'" *Sturgill*, 114 F.4th at 807–08 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 47 (2011)). As the Sixth Circuit has explained in this context:

> [T]hat there may be both religious and secular reasons for an act does not elevate the latter over the former, especially at the pleading stage. *See Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024) (explaining in a COVID-19 vaccine religious exemption case that "[a]s EEOC Guidance says, 'overlap between a religious and [a secular] view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system'" (quoting EEOC Compliance Manual § 12-I(A)(1) (Jan. 15, 2021))); *Callahan v. Woods*, 658 F.2d 679, 684 (9th Cir. 1981) ("[A] coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one."). The Red Cross's proffered "obvious alternative explanation" for Sturgill's accommodation request—that it was rooted in medicine, not religion—is one we "cannot simply credit" at this stage. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 195 (2024) (citation omitted).

*Id.* at 810. The *Sturgill* court determined, as the undersigned does here, given the procedural posture and specific facts alleged, "we need not define the outer limits of

---

[5] "Courts routinely accept that opposition to vaccination based on purportedly religious concerns over abortion constitute beliefs that are religious on their face." *Speer v. UCOR LLC*, No. 3:22-cv-426, 2024 WL 4370773, at *6 (E.D. Tenn. Oct. 1, 2024) (citing *Williams v. Blue Cross Blue Shied of Mich.*, No 23-cv-12066, 2024 WL 1994258, at *4 (E.D. Mich. May 6, 2024)).

Title VII's scope on this point." *Id.* Instead, "we leave it to the parties to factually probe [Morrison's] claims and [Scripps'] actions during discovery" and predict that these facts will be tested at summary judgment. *Id.* at 810–11.

Based on the foregoing reasons, Morrison's claims for religious discrimination survive, at least for now.

**Morrison fails to plausibly allege a claim for retaliation (Count III).** Morrison contends that his accommodation request itself constitutes "opposition" to Scripps' vaccination policy. (Doc. 32 ¶ 135). It does not. *See Stanley,* 808 F. App'x at 358 ("A request for an accommodation does **not** constitute protected activity under Title VII[.]") (emphasis added).[6] As one would expect, requests for a religious accommodation

---

[6] There is "something of an intra-circuit split" as to whether requesting an accommodation is protected activity. *Collias v. MotorCity Casino*, No. 2:22-CV-12650-TGB-EAS, 2023 WL 6406220, at *6 (E.D. Mich. Sept. 30, 2023). As Judge Berg explains:

> **In 2003, the Sixth Circuit decided *Creusere v. Board of Education*, which found that the plaintiff "was clearly engaged in a protected activity by requesting religious accommodation." 88 F. App'x 813, 821 (6th Cir. 2003). But in 2020, in *Stanley v. ExpressJet Airlines*, the Sixth Circuit stated that "[a] request for an accommodation does not constitute protected activity under Title VII, which clearly delineates two options: opposition to discriminatory practice or participation in an investigation." 808 F. App'x 351, 358 (6th Cir. 2020).**
>
> Courts in this district appear to rely on *Stanley* as controlling. For example, in *Garczynski v. Accident Fund Insurance Co.*, No. 22-12615, 2023 WL 3437294 (E.D. Mich. May 12, 2023), a case involving a COVID-19 vaccination policy also brought by Plaintiffs' counsel, the Honorable Gershwin A. Drain closely examined the relative persuasiveness of *Creusere* and *Stanley*. Judge Drain noted that in *Creusere*, the Sixth Circuit did not engage in any substantive legal analysis before deeming the request for religious accommodation a protected activity. *Id.* at *3. But by contrast in *Stanley*, "the Sixth Circuit assessed the text of Title VII and determined that a request for an accommodation does not qualify as a protected activity under the statute," making *Stanley* "far more persuasive on this issue." *Id.* Likewise, the Honorable Nancy G. Edmunds recently cited *Stanley* to note that requesting a religious accommodation does not constitute protected activity. *Smith v. COBX Co.*, No. 22-12836, 2023 WL 2578945, at *2 (E.D. Mich. Mar. 20, 2023). Other Sixth Circuit district courts have likewise rejected *Creusere* in favor of *Stanley*. *See Hymes v. Sec'y of the Air Force*, No. 21-204, 2023 WL 1819106, at *9 (S.D. Ohio Feb. 7, 2023) [(Rose, J.)]; *Edwards v. City of Cincinnati*, No. 22-503, 2023 WL 145898, at *5 (S.D. Ohio Jan. 10, 2023) [(Dlott, J.)].

10

vis-à-vis COVID vaccination policies fall squarely within this rule.  *See Bass v. T-Mobile USA, Inc.*, No. 22-11975, --- F.Supp.3d ---, 2024 WL 1315843 (E.D. Mich. Mar. 27, 2024); *Dobson v. Mid-America Conversion Servs., LLC*, No. 5:22-CV-210-KKC, 2024 WL 4729867 (E.D. Ky. Nov. 8, 2024); *Prida*, 2023 WL 7003402; *Collias v. MotorCity Casino*, No. 2:22-CV-12650-TGB-EAS, 2023 WL 6406220 (E.D. Mich. Sept. 30, 2023); *Garczynski v. Accident Fund Insurance Co.*, No. 22-12615, 2023 WL 3437294 (E.D. Mich. May 12, 2023). *Smith v. COBX Co.*, No. 22-12836, 2023 WL 2578945 (E.D. Mich. Mar. 20, 2023).  Because Morrison did not engage in protected activity, he cannot establish the first element of a prima facie case of retaliation.

Morrison also contends that his November 12, 2021 challenge to the way Scripps "mishandled" his accommodation request constitutes opposition.  (Doc. 32 ¶¶ 133, 134; *see id.* ¶ 56).  It (also) does not.  Morrison did not attach this email to either his original or amended pleadings.  But his summary of its text—"there was no detail provided about the process, that the process was not interactive as Scripps had informed [him] it would be prior to the submittal, and [he] thereby expressed that he did not believe that Scripps had acted lawfully[ ]"—makes "scant" reference to Title VII or discrimination.  *Prida*, 2023 WL 7003402, at *7 ("[A] complaint in which the plaintiff mixes charges of discrimination with generalized management grievances will not be protected where it is clear that the plaintiff

---

This Court has not identified any Sixth Circuit cases adopting *Creusere*'s approach.  **Given the soundness of the reasoning in *Stanley*, and the unanimity of the district courts in this circuit following it, the Court concludes that the rule in *Stanley* forecloses Plaintiffs' Title VII retaliation claims because requesting religious accommodation is not a protected activity.**

*Id.* (emphasis added).  District courts within the Sixth Circuit continue to follow *Stanley*, as subsequent main-text citations reflect.

11

is really contesting management practices.") (citing *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989)).

Even if Morrison could show that he engaged in protected activity, he cannot establish the fourth element of a prima facie case, causation.

To establish causation, a Title VII plaintiff must show that his "protected activity was a **but-for** cause of the alleged adverse action of the employer." *Laughlin v. City of Cleveland*, 633 F. App'x 312, 315 (6th Cir. 2015) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)) (emphasis added). Yet Morrison unmistakably alleges that he was terminated "for not complying with [Scripps'] vaccine mandate after denying his accommodation request." (Doc. 32 ¶ 61). Notably, Morrison does *not* allege that he would *not* have been terminated if he had *not* asked for an accommodation. *See Bass*, 2024 WL 1315843, at *11; *Collias*, 2023 WL 6406220, at *7; *Lucky v. COBX, Co.*, 2023 WL 3359607, at *2–3. And true, "[a]n employee can often allege sufficient causal connection by showing a close temporal proximity between h[is] protected activity and the employer's adverse employment action." *Prida*, 2023 WL 7003402, at *7 (citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)). Temporal proximity alone, however, "is insufficient when an employer is merely 'proceeding along lines previously contemplated[.]'" *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)). Here, the "order of events" makes clear that Morrison's termination was a "previously contemplated" employment action in response to his failure to be vaccinated. *See id.* (citing *Breeden*). Morrison knew he risked termination as soon as Scripps' policy was announced. (Doc. 32 ¶¶ 26, 32, 37, 57).

Because Morrison has not pled facts that, if believed, would establish that he

12

engaged in protected activity or, alternatively, that his protected activity was a "but-for" cause of his termination, he fails to state a claim for Title VII retaliation. Accordingly, Scripps' motion in this regard is well-taken.

IV. **Conclusion**

In sum, Defendant The E.W. Scripps Company's (Rule) 12(b)(6) Motion to Dismiss (Doc. 34) is **GRANTED** as to Plaintiff's retaliation claim (Count III) but otherwise **DENIED**.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court