UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| ROBERT MORRISON, | ) | Case No. 1:23-cv-00279-MRB |
| | ) | |
| Plaintiff, | ) | Judge Michael R. Barrett |
| v. | ) | |
| | ) | |
| E.W. SCRIPPS COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant E.W. Scripps Company ("Scripps" or "Defendant"), for its Answer to Plaintiff Robert Morrison's ("Plaintiff" or "Mr. Morrison") Second Amended Complaint (hereinafter "Complaint", states as follows:

1.  This lawsuit stems from Defendant's illegal termination of the Plaintiff on December 3, 2021, after it refused to provide Mr. Morrison, a remote employee, a religious exemption from its COVID-19 vaccine mandate.

**Answer:** Defendant denies the vague allegations and legal conclusions in Paragraph 1 of the Complaint.

## PARTIES

2.  Plaintiff Robert Morrison ("Morrison") is, and at all times relevant hereto has been a resident of Kentucky.

**Answer:** Defendant is without sufficient knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and therefore denies those allegations.

3.  Defendant The E.W. Scripps Company ("Scripps") is a Ohio domiciled corporation, with its principal place of business at 312 Walnut Street, Suite 2800, Cincinnati, Ohio, 45202. At all times relevant hereto, Scripps employed more than 500 persons.

**Answer:** Defendant admits the allegations in Paragraph 3 of the Complaint.

## JURISDICTION & VENUE

4.      Subject matter jurisdiction over the federal claims and causes of action asserted by the Plaintiff in this action is conferred on this Court pursuant to 28 U.S.C. §1331, 42 U.S.C. § 2000e-5, 28 U.S.C. §1332, 28 U.S.C. §1367, and other applicable law.

**Answer:** Defendant denies vague allegations and legal conclusions in Paragraph 4 of the Complaint.

5.      This Court has personal jurisdiction over Defendant because it is a domiciliary of Ohio and this judicial district.

**Answer:** Defendant admits the allegations in Paragraph 5 of the Complaint.

6.      Venue is proper in this District and Division under 28 U.S.C. 1391(b)(1) and (2) in that the Defendant resides in, and the facts giving rise to this matter arose in, the Southern District of Ohio and the Cincinnati Division.

**Answer:** Defendant admits the allegations in Paragraph 6 of the Complaint.

## FACTS

*Mr. Morrison's Religious Beliefs and Lifelong Commitment to the Sanctity of Human Life*

7.      Mr. Morrison was raised in a religious family. Specifically, Mr. Morrison was raised Catholic and attended Catholic schools and an interdenominational university. Mr. Morrison's parents and maternal grandparents instilled the profound spiritual significance of the sanctity of human life. Mr. Morrison's parents and teachers also emphasized that every human life has limitless value.

**Answer:** Defendant is without knowledge as to the allegations in Paragraph 7 and therefore denies these allegations.

8.     Mr. Morrison accepted Jesus as his personal savior as a young child and rededicated his life when he was twenty-two.

**Answer:**   Defendant is without knowledge as to the allegations in Paragraph 8 and therefore denies these allegations.

9.     Mr. Morrison, while acutely aware of his imperfections, is a devout Christian and strives to follow the teachings, practices, and tenets of Christianity. Since childhood, Mr. Morrison has viewed the Bible as a spiritual guide that contains the spiritual principles by which he endeavors to order his life under.

**Answer:**   Defendant is without knowledge as to the allegations in Paragraph 9 and therefore denies these allegations.

10.     Through religious teachings at home, church, school, and in the Bible, Mr. Morrison from an early age formed his own religious beliefs regarding the sanctity of human life. From an early age, Mr. Morrison formed his own religious beliefs, informed by the Bible, spiritual mentors, Bible and religion classes, and through his own study of the Bible and through prayer, that every human life has incalculable value to God, and therefore, that the taking of human life is one of the most serious violations of his religious beliefs and practices conceivable.

**Answer:**  Defendant is without knowledge as to the vague allegations in Paragraph 10 and therefore denies these allegations.

11.     From his childhood, Mr. Morrison's religious beliefs and practices have been a central aspect of his life. As such, Mr. Morrison attended Oral Roberts University and earned a Master of Divinity degree in 1997. While attending Catholic primary, secondary, and post-secondary schools, as well as Oral Roberts University, there was always an emphasis on the sanctity of life and protecting the unborn and those that could not defend themselves. As such, Mr. Morrison's pro-life religious views are embedded into his spiritual DNA.

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 11 and therefore denies these allegations.

12.     For at least the past 50 years, in his personal system of religious beliefs, abortion is an activity that Mr. Morrison believes God hates because it intentionally tramples on the sanctity of human life, a life that Mr. Morrison believes God formed.

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 12 and therefore denies these allegations.

13.     Mr. Morrison bases his deeply religious beliefs and practices in the sanctity of human life, that life begins at conception and is ordained by God, and that abortion entails the taking of an innocent human's life which is in tension with scriptural teaching, including, without limitation, Exodus 20:13 (ESV), Exodus 23:7 (ESV), Jeremiah 1:5 (ESV), and Psalms 139:13-16 (ESV).

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 13 and therefore denies these allegations.

14.     Mr. Morrison's deeply held religious beliefs in the sanctity of human life has naturally included a lifetime commitment against abortion, including pro-life and anti-abortion efforts at the local level, attending pro-life events, and regular church involvement and attendance at a church that shares his religious convictions regarding the sanctity of human life.

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 14 and therefore denies these allegations.

15.     The religious beliefs in the profound value of human life and the consequent religious objections to the practices of abortion Mr. Morrison formed in his childhood have not faltered; in fact, Mr. Morrison's religious convictions have only strengthened over time.

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 15 and therefore denies these allegations.

16.     In adulthood, Mr. Morrison is an active member of a local church (the Heritage Fellowship Church). On a weekly basis, he participates in church activities, outreaches, and regularly volunteers for church related activities.

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 16 and therefore denies these allegations.

17.     Mr. Morrison has been a men's group co-leader at his church since 2016, and, as of 2021, joined the board of the church.

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 17 and therefore denies these allegations.

18.     The church that Mr. Morrison attends holds very strong views regarding upholding the sanctity of human life, including teachings that abortion is contrary to scripture, and that it is wrong. Mr. Morrison agrees with those teachings.

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 18 and therefore denies these allegations.

19.     For Mr. Morrison, pro-life views and opposition to abortion is a litmus test when choosing leaders to follow, and whether to support a cause.

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 19 and therefore denies these allegations.

20.     The leadership of the Heritage Fellowship Church opposes abortion because of Biblical precepts related to the sanctity of human life, and pro-life religious views are woven into the fabric of the church. Mr. Morrison shares the Church's religious beliefs in this regard, and that is one of the central reasons why he has chosen to attend Heritage Fellowship Church.

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 20 and therefore denies these allegations.

21.     The Heritage Fellowship Church is actively pro-live in the local community involved in the local community, including participation in the Care Net Program, which provides crisis pregnancy services to discourage abortion and to provide support to women who choose life, a program Mr. Morrison's wife is involved in, and a program Mr. Morrison intentionally supports financially through offerings to the church.

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 21 and therefore denies these allegations.

22.     The Heritage Church and Mr. Morrison were involved in putting out "choose life" yard signs, which were distributed by the church. For as long as Mr. Morrison has been involved with Heritage Fellowship Church, there has been a consistent pro-life religious belief of the church, which has been the topic of numerous sermons delivered from the pulpit. Mr. Morrison ascribes and agrees with that messaging.

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 22 and therefore denies these allegations.

23.     The Heritage Fellowship Church's senior pastor, Cleddie Keith, regularly preaches sermons that include messages reminding members that the Bible commands Christians to safeguard human life and that abortion is inconsistent with the Bible's teachings. Pastor Keith preached from the pulpit on several occasions prior to the announcement of the Scripps vaccination requirement regarding and the horrors of abortion. Mr. Morrison agreed with the messages, which Mr. Morrison understood to include declining vaccinations that depend upon abortion for the vaccination to exist.

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 23 and therefore denies these allegations.

***Mr. Morrison's Employment Background and Scripps' Vaccine Mandate***

24.     Mr. Morrison was employed as an Applications Architect with Scripps, at all times relevant hereto.

**Answer:**     Defendant admits this allegation.

25.     As an Applications Architect, Mr. Morrison's duties included computing solutions for the company. The position is and was an informational technology position, fully capable of remote work, and (i) almost all of Mr. Morrison's work was telework from the inception of the position; (ii) for the duration of the COVID-19 pandemic, Mr. Morrison's work was, in fact, telework, with meetings conducted by Zoom, as necessary; and (iii) interactions with other employees in person was not necessary to the performance of his duties.

**Answer:**  Defendant admits the allegations regarding the general duties of Plaintiff's position but denies all remaining allegations in Paragraph 25.

26.     On or about September 9, 2021, Scripps created a mandate requiring employees to receive vaccination for COVID-19, which Mr. Morrison discovered on September 13, 2021 when he first discovered notice of it and he received an company-wide email from Scripps about it. Any such accommodation requests had to be submitted on a very short timeframe: by September 16, 2021.

**Answer**: Defendant admits that it created its vaccine policy on or about September 9, 2021, but is without sufficient knowledge or information sufficient to form a belief as to the allegation of when Defendant "first discovered notice of it" and the remaining vague allegations in Paragraph 26 of the Complaint.  Those allegations are thus denied.

27.     Once the Mandate was announced, a religious exemption was required to be submitted within three business days after receiving the forms from HR.

**Answer:**  Defendant denies the allegations in Paragraph 27 as vague.

28.     Religion is a central and critical aspect of Mr. Morrison's life. As part of his religious practices, Mr. Morrison regularly prays about large and small life decisions, and has daily devotions,

which includes scripture reading and contemplation of Bible passages and incorporation of those passages into his practical life. Scripps' vaccination mandate was a decision point that Mr. Morrison seamlessly placed under the umbrella of his established and regular religious practices.

**Answer:** Defendant denies the allegations in paragraph 28.

29.     As part of his religious practices, Mr. Morrison believes in a concept he refers to as the "path of peace." That path of peace involves consultation and prayer to be guided by the Holy Spirit for major life decisions. If Mr. Morrison lacks spiritual peace about a decision or a path, it is a violation of his religious practices to take that path. Similarly, if he has spiritual peace about a decision or path, he must, for religious reasons, follow that path. This is a routine Mr. Morrison has cultivated throughout his decades-long spiritual journey as a Christian

**Answer:** Defendant is without knowledge as to the vague allegations in Paragraph 29 and therefore denies those allegations.

30.     Before Scripps instituted the Mandate, Mr. Morrison learned that the available COVID-19 vaccines had what he viewed as illicit connections to abortion. Specifically, Mr. Morrison was horrified to learn that the COVID-19 vaccines had used fetal cell lines in the development and manufacture for the Johnson & Johnson vaccine, and learned that the Pfizer and Moderna vaccines had used fetal cell lines in their testing and development, which caused a conflict with his faith to receive any of these vaccines, as all of them relied on the practice of abortion to come to market.

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 30 of the Complaint.

31.     Even though Mr. Morrison had been repeatedly instructed by Scripps and through health authorities that the vaccines would provide profound health benefits to him, especially considering his age, Mr. Morrison was convicted by the Holy Spirit against receipt of the mandated vaccines.

8

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 31 of the Complaint.

32.     Immediately after the Mandate was announced, and during the brief period he had to contemplate whether to violate his religious beliefs on the one hand, or on the other hand maintain his spiritual integrity and potentially sacrifice his career, in or around September 9, 2021 through September 12, 2021, Mr. Morrison's spiritual resolve to maintain his religious convictions regarding the sanctity of human life and opposition to abortion solidified. Mr. Morrison decided that he would uphold his pro-life religious beliefs and practices at this time no matter the cost, even if it meant losing his job.

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 32 of the Complaint.

33.     Days after the Mandate was announced, on September 13, 2021, at 1:54 p.m., Mr. Morrison requested information on the accommodation process through an email to human resources and was provided a copy of a form that Scripps required employees seeking an exemption/accommodation to fill out. A few hours later, at 3:56 p.m., he was asked whether he was going to pursue a religious or medical exemption. And, demonstrating the importance of the issue to him and the sincerity of his religious beliefs, three minutes later, at 3:59 p.m., he reported he was seeking a religious exemption.

**Answer:**  Defendant admits the timing of the allegations in Paragraph 33 but denies the conclusions relating to the alleged importance and sincerity as further alleged in Paragraph 33.

34.     The Scripps religious exemption process was approximately 1-week long, and provided employees very little time to outline or fully explain their religious objections and to gather supporting documentation for their religious exemption requests.

**Answer:**  Defendant denies the allegations in Paragraph 34.

35.    During this very short period, Mr. Morrison met with his pastor regarding his religious exemption request. He discussed the Scripps' vaccination requirement with his pastor, Cleddie Keith, and they discussed profound religious objections to receiving the mandated vaccines. Mr. Morrison relayed that he was going to pursue a religious exemption and accommodation, in light of the fetal cell line issue and its conflict with his deep and abiding faith and objections to abortion.

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 35 of the Complaint.

36.    Pastor Keith then provided a religious objection letter to Mr. Morrison, a letter that Pastor Keith had used as a template, with changes made for each parishioner after consultation with the parishioner, and used for parishioners who were forced by employers to inject products associated with the horrors of abortion into their bodies, which they viewed as sinful as a condition of employment, particularly in light of past pulpit messaging by the Pastor related to abortion, and Mr. Morrison's agreement with that religious messaging by Pastor Keith.

**Answer:**  Defendant admits that a letter was provided to Mr. Morrison and that letter is in the record and speaks for itself.  All other allegations in Paragraph 36 are denied as vague.

37.    Mr. Morrison and Pastor Keith discussed the possibility that Scripps may not grant the religious accommodation, and both acknowledged that adherence to God's will, even if meant losing one's job, was the spiritual route he must take as to do otherwise would violate his sincerely held religious beliefs, and therefore, would be a sin, in addition to supporting abortion through injecting medical products into his body that were developed, manufactured, and/or tested using fetal cells derived from aborted pre-born children.

**Answer:**  Defendant denies the vague allegations, arguments, and conclusions in Paragraph 37 of the Complaint.

38.     After the discussion, Mr. Morrison reviewed the letter, verified that it comported with his own religious beliefs, and then signed the letter.

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 38 of the Complaint.

39.     On September 16, 2021, a few days after Mr. Morrison notified Scripps he would seek a religious exemption and accommodation, and after Mr. Morrison discussed his religious conflict with the Mandate with his pastor, Mr. Morrison timely applied for a religious exemption via the form and process required by Scripps. That form, as reflected in Exhibit A to the original complaint (Doc. 1-1) and incorporated by reference herein, directed employees to "complete, sign, and submit this form no later than 9/16/21," and that late submissions would not generally be accepted.

**Answer:** Defendant states that the form speaks for itself as to timing and the terms therein. All other allegations, if any, in Paragraph 39 are denied.

40.     The form indicated that employees should "write below, or attach, a statement that explains in your own words why you are requesting this religious exemption. The statement should specifically describe the religious principles that guide your objection to vaccination." See Exhibit A (Doc. 1-1).

**Answer:** Defendant states that the form speaks for itself as to the terms therein.  All other allegations, if any, in Paragraph 40 are denied.

41.     The form indicated that "Scripps may require additional supporting information." And if such information was requested, the employee would be contacted.

**Answer:** Defendant states that the form speaks for itself as to the terms therein.  All other allegations, if any, in Paragraph 41 are denied.

42.     And the form had an attestation clause, requiring certification of the truthfulness of the information contained in the submission, threatening significant consequences, including termination, for untruthful statements, and acknowledging that other mitigation measures may be implemented if the request was approved.

**Answer:** Defendant states that the form speaks for itself as to the terms therein.  All other allegations, if any, in Paragraph 42 are denied.

43.     Mr. Morrison signed and completed the form, attached as **Exhibit A** (Doc. 1-1), and attached a letter from him and his pastor, on church letterhead, indicating that the letter was from Mr. Morrison, and that Pastor Keith supported the exemption request, with statements such as:

> Each of the Covid vaccines that are now being offered, violate my deeply held, religious beliefs and spiritual truths by means of their use of aborted fetal tissue in the development of each of these vaccines.
>
> As an example of this process, each of these Covid vaccines were created from protein testing using the abortion-derived, cell line, HEK-293.  To be vaccinated by these reprehensible, vaccines would be a criminal violation of my religious freedom and implicate myself in this horrid practice, and offend my precious faith, which is protected by The United States Constitution as well and International Law.

**Answer:** Defendant states that the form and the exhibit referenced speak for themselves.  All other allegations, if any, in Paragraph 43 are denied.

44.     Mr. Morrison is deeply religious. In fact, his co-workers and managers within Scripps were well-aware of his deep and abiding religious beliefs, sometimes apologizing when using foul language in his presence. To that end, and as noted above, Mr. Morrison has had extensive involvement in his church.

**Answer:**  Defendant is without sufficient knowledge or information sufficient to form a belief as to the truth of the vague allegations in Paragraph 44 and therefore denies those allegations.

45.     Again, Mr. Morrison had sincerely held religious beliefs regarding vaccination and vaccines with any ties to abortion. He met with his pastor prior to submission of his religious

accommodation request with Scripps, explaining that he needed to document his religious beliefs, Pastor Keith himself had addressed abortion from the pulpit, and Pastor Keith had explained that many members of the congregation had similar beliefs, and gave Mr. Morrison a letter that Mr. Morrison and Pastor Keith signed, indicating that it was supported by both of them.

**Answer:** Defendant states that Paragraph 45 makes a legal conclusion as to "sincerely held religious belief" to which no response is required. To the extent a response is required, that allegation is denied. Defendant furthermore is without sufficient knowledge or information sufficient to form a belief as to the truth of the remaining vague allegations in Paragraph 45 and therefore denies those allegations

46. Mr. Morrison possessed, and still possesses sincerely held religious beliefs that prevented him from receiving the available COVID-19 vaccines due to their connection with abortion (and fetal cell lines) in 2021. All such COVID-19 vaccines were either produced or manufactured with fetal cell lines (J&J) or had confirmation testing performed with these cell lines (Pfizer and Moderna) and Mr. Morrison could not receive them consistent with his beliefs. Any request to inject these illicit substances into his body violated his sincerely held beliefs.

**Answer:** Defendant denies the allegations in Paragraph 46.

47. Demonstrating the sincerity of his religious beliefs, Mr. Morrison was ultimately terminated so he could maintain his religious integrity.

**Answer:** Defendant denies the allegations in Paragraph 47.

***Scripps' Bad Faith Religious Exemption and Accommodation Process***

48. On October 14, 2021, Scripps denied Mr. Morrison's requested religious accommodation. With absolutely no evidence to support their determination and having failed to even interview Mr. Morrison about his beliefs -- and contrary to the un-rebutted statements made by Mr. Morrison and his pastor, they determined that, while Mr. Morrison had asserted a religious belief that

conflicted with the mandate, they challenged his sincerity, stating: "Your request has been denied for the following reason(s): The information provided does not demonstrate that the religious belief asserted supports being unable to get the vaccine or that the belief is 'sincerely held,' as required by law."

**Answer:** Defendant admits that it denied Plaintiff's request on or about October 14, 2021 and that its written denial speaks for itself and denies the remaining vague allegations in Paragraph 48 of the Complaint.

49. Critically, Scripps acknowledged that the belief Mr. Morrison had asserted to support his religious exemption request was religious in nature, cementing that Scripps knew it had an obligation to accommodate short of undue hardship under Title VII.

**Answer:** Defendant denies the allegations in Paragraph 49 of the Complaint.

50. Scripps' pretextual reason for denying Mr. Morrison a religious exemption and accommodation was that his confirmed religious beliefs were not "sincerely held."

**Answer:** Defendant denies the vague arguments and conclusions in Paragraph 50 of the Complaint.

51. Scripps maintained that Mr. Morrison's religious beliefs were not sincerely held and then terminated him, even though Mr. Morrison held onto those convictions at the expense of his career.

**Answer:** Defendant admits that Mr. Morrison does not have sincerely held religious beliefs such to entitle him to any accommodation. All other allegations in Paragraph 51, if any, are denied.

52. In other words, Scripps had the audacity to question and conclusively determine Mr. Morrison's sincerely held religious beliefs were invalid for lack of sincerity, without even interviewing him or his pastor for follow-up questions regarding Mr. Morrison's plainly stated religious conflict with vaccination and in spite of the fact that Mr. Morrison demonstrated he was willing to lose his

career over his religious convictions. Again, Scripps did not interview Mr. Morrison about his beliefs, or request any follow-up information from him, before coming to this pro forma and baseless decision.

**Answer:** Defendant denies the vague arguments and conclusions in Paragraph 52 of the Complaint.

53.     On October 21, 2021, Mr. Morrison asked for follow-up information from Scripps on how they reached their decision.

**Answer:**  Defendant admits that it had additional conversations with Plaintiff on or about October 21, 2021 concerning the accommodation request.

54.     When meaningful information was not forthcoming, Mr. Morrison followed up again on October 27, 2021, with yet another email to Scripps/the H.R. representative, that pointed out the following: "I have been remote full time for nineteen months now and can continue to do so without issue. If there is a need to come to the office, I can submit to temperature testing, routine hand-washing, or other measures currently approved by medical professionals for preventing the spread of COVID. Also, I have had COVID, recovered, and have tested positive for antibodies." That email references the fact that Mr. Morrison had previously had COVID-19, and had documentation with anti-bodies and demonstrated natural immunity, as well as the nature of his remote work.

**Answer:**  Defendants admits that it received the email with the quoted language but denies the vague allegations and conclusions in Paragraph 54 of the Complaint.

55.     On October 29, 2021, the H.R. representative again sent Mr. Morrison an email, noting that: "I have received a notification from the Review Committee and the original decision of denial still stands."

**Answer:** Defendant admits the allegations in Paragraph 55 of the Complaint.

56.     On November 12, 2021, Mr. Morrison again emailed human resources, indicated that there was no detail provided about the process, that the process was not interactive as Scripps had

informed Mr. Morrison it would be prior to the submittal, and Mr. Morrison thereby expressed that he did not believe that Scripps had acted lawfully; and then, accepting that they may be planning to terminate him, asked questions about the expected termination.

**Answer:** Defendant admits that it received a further email from Plaintiff on or about November 12, 2021 but denies the vague allegations and conclusions in Paragraph 56 of the Complaint.

57.     If there were open questions by Scripps about the sincerity of Mr. Morrison's religious beliefs in conflict with vaccination, it was readily apparent to Scripps that by the time of his email on November 12, 2021, Mr. Morrison was prepared to be terminated, rather than succumb to the mandate that violated his sincerely held religious beliefs.

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 57 of the Complaint.

### *Scripps' Refusal to Consider No-Cost Accommodation Options*

58.     Before terminating Mr. Morrison, Scripps had actual and/or constructive knowledge through its business records that its vaccinated employees were contracting COVID-19 at similar and likely higher rates during the relevant timeframes than unvaccinated employees who, like Mr. Morrison, possessed natural immunity.

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 58 of the Complaint.

59.     Before terminating Mr. Morrison, Scripps had actual and/or constructive knowledge that the mandated vaccines were neither safe nor effective by any objective standard. Yet, with this knowledge, Scripps nonetheless attempted to force Mr. Morrison to violate his sincerely held religious convictions as a condition of continued employment.

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 59 of the Complaint.

60. Scripp's systematic refusal to recognize natural immunity—which has been established through hundreds of years of scientific research as providing stronger and more robust protection than vaccine-elicited immunity—forced Mr. Morrison without credible justification to choose between his religious beliefs and feeding his family.

**Answer: De**fendant denies the vague allegations, arguments, and conclusions in Paragraph 60 of the Complaint.

61. Instead of accommodating Mr. Morrison's sincerely held religious beliefs, which could have been accomplished through simply incorporating the scientific reality of natural immunity into its business practices, and which would have cost the company nothing whatsoever, Scripps terminated Mr. Morrison on December 3, 2021 for not complying with their vaccine mandate after denying his accommodation request.

**Answer:** Defendant admits that it terminated Plaintiff's employment on or about December 3, 2021 for violation of the vaccination policy, a safety policy, but denies the remaining vague allegations, arguments, and conclusions in Paragraph 61 of the Complaint

62. When it terminated Mr. Morrison, Scripps had actual knowledge, supported by a signed statement by Mr. Morrison's pastor, that the reason Mr. Morrison could not comply with the Mandate was because of his profound religious objections to receiving a COVID-19 vaccine based on his pro-life religious practices.

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 62 of the Complaint.

63. This termination was also motivated by Mr. Morrison's questioning of the Scripps sham religious accommodation process, prompting the charges herein for retaliation.

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 63 of the Complaint.

17

***Scripps' Pretextual Justifications for Terminating Mr. Morrison Presented to the EEOC***

64.     Before the EEOC, the company continued to question the sincerity of Mr. Morrison's religious beliefs, because allegedly, "it appeared that his letter was a form letter provided by his church, rather than a description of his beliefs submitted in his own words as the instructions required."

**Answer:** Defendant admits that its EEOC Position contains the quoted language, in part, but denies the remaining vague allegations, arguments, and conclusions in Paragraph 64 of the Complaint.

65.     Rather than manufacture this after-the-fact sham explanation of its sham process, of course, Scripps could have simply asked Mr. Morrison about any concerns they actually had, prior to denying his request, but it did not do so, demonstrating its conscious wrongdoing and the pretextual nature of their later position.

**Answer:**  Defendant denies the vague allegations, arguments, and conclusions in Paragraph 65 of the Complaint.

66.     Scripps likewise disingenuously contended that "there was no information personal to Mr. Morrison in the letter, which again implied it was a form letter," even though Mr. Morrison signed it, it was written in the first person about Mr. Morrison, and it was signed by him and his pastor.

**Answer:**  Defendant admits that the letter on its face reflects a signature of Plaintiff and his pastor but denies the remaining vague allegations, arguments, and conclusions in Paragraph 66 of the Complaint.

67.     And Scripps attempted to split hairs before the EEOC about Mr. Morrison's statement that aborted fetal tissue was used in the development of the vaccines because "[f]etal tissues and fetal cell lines are not the same thing," allegedly Johnson & Johnson used the cell lines in development, while the other two manufacturers used the cell lines in testing.

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 67 of the Complaint.

18

68.     In actuality, and as Mr. Morrison contended, the cell lines were used *to develop* each of the vaccines, whether in the manufacturing phase, or the testing phase, as Scripps ultimately admitted. And the continuation and propagation of aborted fetal tissue through cell line propagation is considered by religious adherents, such as Mr. Morrison, to be continued use of aborted fetal tissue.

**Answer:**  Defendant denies the vague allegations, arguments, and conclusions in Paragraph 68 of the Complaint.

69.     Scripps likewise indicated that Mr. Morrison did not state, in his request, "whether their objection applied to other vaccines, or just to COVID-19."

**Answer:**  Defendant admits the allegation in Paragraph 69 of the Complaint.

70.     But, and again, and giving the game away that this was not the actual reason for the denial, Scripps never interviewed Mr. Morrison to ask him about this, despite the fact that it could have done so in under five minutes.

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 70 of the Complaint.

71.     At bottom, Scripps, its attorneys responding to the EEOC, and, if the request was actually reviewed, those reviewing Mr. Morrison's accommodation request were simply hostile to his religious beliefs.

**Answer:** Defendant denies the vague allegations, arguments, and conclusions in Paragraph 71 of the Complaint.

72.     There was no burden, undue or otherwise, towards Scripps accommodating Mr. Morrison's sincerely held religious beliefs, because, among other reasons; (i) his position was handled remotely throughout the COVID-19 pandemic and could have continued to be handled remotely; (ii) mitigation measures could have been implemented; (iii) Mr. Morrison explained to Scripps, and had documentation available, that he was previously infected and had prior natural immunity, which is just

19

as, if not more effective than vaccine-derived immunity;[1] (iv) available COVID-19 vaccines did not provide, and never provided, immunity from transmission, and at best constituted a therapeutic that might help to mitigate the severity of the disease, but was less effective than natural immunity from prior infection, particularly for the Johnson &Johnson vaccine, which Scripps accepted.

**Answer:**  Defendant denies the vague allegations, arguments, and conclusions in Paragraph 72 of the Complaint, including those in the referenced footnote and denies Plaintiff is entitled to expert testimony.

73.    Mr. Morrison filed a charge of discrimination on March 31, 2022, a true and accurate copy of which was attached to the original complaint as **Exhibit B** (Doc. 1-2) and is incorporated by reference herein. The charge was filed, per work sharing agreement, with the Ohio Civil Rights Commission on that same date.

**Answer:** Defendant admits that Plaintiff filed the Charge attached as Exhibit B but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 73 of the Complaint and denies those allegation

74.    On May 4, 2023, the EEOC issued a right to sue, which was received on May 5, 2023. A true and accurate copy of that document was attached to the original complaint as **Exhibit C** (Doc. 1-3), and is incorporated by reference herein.

**Answer:** Defendant admits that the EEOC issued the right to sue in Exhibit C but is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 74 of the Complaint and denies those allegations.

### COUNT I – 42 USC 2000e-2 (religious discrimination – failure to accommodate)

75.    Plaintiff reincorporates the preceding paragraphs as if fully written herein.

---

[1] https://www.news-medical.net/news/20230504/COVID-19-risk-natural-infection-vs-vaccine-induced-immunity.aspx (last accessed 11/21/2023). Plaintiff will be presenting expert testimony on this and other points in this paragraph.

**Answer:** Defendant incorporates its responses to Paragraphs 1 through 74 of Plaintiff's Complaint as if fully set forth herein.

76. Scripps is and was, at all times relevant hereto, an "employer," as that term is defined in 42 U.S.C. § 2000e(b), because it had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

**Answer:** Defendant admits the allegations in Paragraph 76 of the Complaint.

77. Mr. Morrison was, at all times relevant hereto, an "employee," as that term is defined in 42 U.S.C. § 2000e(f), because he was employed by Scripps, which was an "employer."

**Answer:** Defendant admits the allegations in Paragraph 77 of the Complaint.

78. Mr. Morrison was qualified for his job positions and possessed a strong performance record.

**Answer:** Defendant denies the vague allegations and legal conclusions in Paragraph 78 of the Complaint.

79. "Religion" is defined in 42 U.S.C. § 2000e(j) as "include[ing] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business."

**Answer:** Defendant states that the partial quote of legal standards speaks for itself and denies the vague allegations and legal conclusions in Paragraph 79 of the Complaint.

80. Further, 42 U.S.C. § 2000e-2(a) prohibits an "employer" from "discharge[ing] any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's … religion…"

**Answer:** Defendant states that the partial quote of legal standards speaks for itself and denies the vague allegations and legal conclusions in Paragraph 80 of the Complaint.

81.     Moreover, 42 U.S.C. § 2000e-2(m) provides that "an unlawful employment practice is established when the complaining party demonstrates that … religion… was a motivating factor for any employment practice, even though other factors also motivated the practice."

**Answer:** Defendant states that the partial quote of legal standards speaks for itself and denies the vague allegations and legal conclusions in Paragraph 81 of the Complaint.

82.     Scripps, as an employer, violated 42 U.S.C. § 2000e-2(a), when it engaged in unlawful religious discrimination against Mr. Morrison by discharging Mr. Morrison on December 3, 2021 due to its unwillingness to accommodate his sincerely held religious beliefs, and further violated that section prior to that date when it failed to accommodate his sincerely held religious beliefs.

**Answer:**  Defendant denies the allegations in Paragraph 82 of the Complaint.

83.     Mr. Morrison held and holds a sincere religious belief that conflicted with the vaccination mandate; he informed Scripps of the conflict; and he was discharged for failing to comply with the conflicting employment requirement because of his religious convictions precluding compliance with the Mandate.[2]

**Answer:** Defendant denies the allegations in Paragraph 83 of the Complaint, including the legal conclusions made in the referenced footnote.

84.     Again, Mr. Morrison holds sincere and deeply held religious convictions that preclude him from being receiving the COVID-19 vaccines that Scripps mandated.

**Answer:** Defendant denies the allegations in Paragraph 84 of the Complaint.

85.     Mr. Morrison timely and thoroughly detailed his religious conflict to vaccination to Scripps.

**Answer:** Defendant denies the allegations in Paragraph 85 of the Complaint.

---

[2] *EEOC v. Arlington Transit Mix, Inc*., 957 F.2d 219, 221 (6th Cir. 1991); *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007).

86.     Scripps then terminated him because he would not violate his religious convictions against vaccination.

**Answer:** Defendant denies the allegations in Paragraph 86 of the Complaint.

87.     Scripps could have accommodated Mr. Morrison's religious objections to vaccination short of undue hardship, including for the reasons set forth in Paragraph 40. Indeed, Scripps could have accommodated without any cost whatsoever by simply recognizing Mr. Morrison's natural immunity to COVID-19 as satisfying its immunization requirement.

**Answer:** Defendant denies the allegations in Paragraph 87 of the Complaint.

88.     Scripps knew or should have known of Mr. Morrison's natural immunity.

**Answer:** Defendant denies the allegations in Paragraph 88 of the Complaint.

89.     Had Scripps engaged in a good faith interactive process calculated towards finding an accommodation (it did not), Scripps would have identified Mr. Morrison's natural immunity as a no-cost accommodation option.

**Answer:** Defendant denies the vague, argumentative allegations in Paragraph 89 of the Complaint.

90.     Even if Scripps presumed (incorrectly) that Mr. Morrison presented increased health and safety risk to the workforce, despite his natural immunity, Scripps could have accommodated without any hardship whatsoever by continuing the status quo of telework and/or by requiring enhanced safety protocols for the rare occasions that Mr. Morrison had to interact with colleagues or the public as part of his job duties.

**Answer:** Defendant denies the vague, argumentative allegations in Paragraph 90 of the Complaint.

91.     Scripps knew free testing for COVID-19 was available throughout the United States during the relevant timeframes, including in the areas where Mr. Morrison lived and worked from.

**Answer:** Defendant denies the vague, argumentative allegations in Paragraph 91 of the Complaint.

92. It would have been no burden whatsoever for Scripps to have permitted testing as an accommodation option. After all, an employee who has tested negative for COVID-19 presented less of a transmission risk than Scripps' vaccinated employees who reported to work and who were not required to regularly test for COVID-19, despite Scripps' knowledge that they were actively contracting and spreading the virus during the relevant timeframes.

**Answer:** Defendant denies the vague, argumentative allegations in Paragraph 92 of the Complaint.

93. Scripps refused to accommodate Mr. Morrison's religious practices because of their religious nature. There is no room in Scripps' workforce for employees who adhere to disfavored religious practices like Mr. Morrison's.

**Answer:** Defendant denies the allegations in Paragraph 93.

94. Considering these factors, Mr. Morrison suffered adverse employment action because of his religious beliefs.

**Answer:** Defendant denies the allegations in Paragraph 94 of the Complaint.

95. For the reasons outlined above, any non-discriminatory reason proffered by Scripps is pretext.

**Answer:** Defendant denies the allegations in Paragraph 95.

96. The foregoing conduct constitutes illegal, intentional discrimination prohibited under 42 U.S.C. § 2000e-2 *et seq.*

**Answer:** Defendant denies the allegations in Paragraph 96.

97. As a direct and proximate result of Scripp's religious discrimination, Mr. Morrison is suffering the injuries and damages hereinafter described.

**Answer:** Defendant denies the allegations in Paragraph 97.

98.     In addition to financial loss, Mr. Morrison has suffered medical, emotional and psychological harm from the months of uncertainty and repeated coercion to abandon his sincere religious beliefs in order to preserve her livelihood and career, and related to his unlawful termination.

**Answer:** Defendant denies the allegations in Paragraph 98.

99.     On belief, numerous individuals specified to Scripps how the vaccination mandate and the company's handling of religious exemption and accommodation requests violated Title VII. Nonetheless, Scripps terminated Mr. Morrison, knowing his termination would violate Title VII. Scripps' termination of Mr. Morrison, while he was a remote worker, and handling of Mr. Morrison's religious accommodation request, demonstrated malice and/or reckless indifference to the federally protected rights of employees, warranting the imposition of punitive damages.

**Answer:** Defendant denies the allegations in Paragraph 99.

100.     Mr. Morrison therefore seeks relief, pursuant to 42 U.S.C. § 2000e-5(f)(g), and (k), and 42 U.S.C. § 1981a, including relief for economic and non-economic compensatory damages and injunctive equitable relief. Specifically, Mr. Morrison seeks back pay, interest on backpay, and the value of back benefits, all through the date of trial; attorney fees to be determined by the lodestar method and calculated under prevailing Rubin rates; and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and punitive damages. All of the foregoing were actually and proximately caused by Scripps's violations of 42 U.S.C. 2000e-2.

**Answer:** Defendant states that the Complaint speaks for itself concerning what relief Plaintiff purports to seek and Defendant denies that Plaintiff has any viable causes of action or is entitled to any of the relief sought.  Any other allegations in Paragraph 100, if any, are denied.

**COUNT II – 42 USC 2000e-2 (religious discrimination – disparate treatment)**

101.     Plaintiff reincorporates the preceding paragraphs as if fully written herein.

**Answer:** Defendant incorporates its responses to Paragraphs 1 through 100 of Plaintiff's Complaint as if fully set forth herein.

102.     Scripps' actions also give rise to an inference of discrimination under a disparate treatment theory.

**Answer:**   Defendant denies the allegations in Paragraph 102.

103.     Mr. Morrison (i) was an is a member of a protected class, here, a class of persons who had sincerely held religious beliefs against the available COVID-19 vaccines that Scripps mandated; (ii) that he experienced an adverse employment action, namely the termination of his employment in December, 2021, (iii) Mr. Morrison was qualified for the position, having performed satisfactorily and in fact receiving accolades and awards within Scripps, and (iv) Mr. Morrison was either replaced by a person outside of the protected class and/or that he was treated differently than similarly situated employees, in that he was fired for non-compliance when employees who did not hold his religious beliefs and received the vaccine were not fired.[3]

**Answer:** Defendant denies the allegations in Paragraph 103, including any legal conclusions in the referenced footnote.

104.     The Sixth Circuit has recently made clear that an inference of discrimination can arise under the fourth element where the surrounding factual circumstances raise reasonable suspicion of an employer's discriminatory motivation behind the adverse employment action, which the facts here demonstrate.[4]

---

[3] *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).
[4] *Barnard v. Powell Valley Elec. Coop.,* 2022 U.S. App. LEXIS 11708, at *19 (6th Cir. Apr. 28, 2022)*; see also Jamoua v. Mich. Farm Bureau*, 2021 WL 5177472, at *16 (E.D. Mich. Nov. 8, 2021) (holding that the "logic behind the 'similarly situated' formulation is that if two employees— materially identical except for say, [religion]—were treated differently, an inference arises that [religion] was the reason for the disparate treatment. But that very same inference can arise from other evidence.").

**Answer:** The allegations in Paragraph 104, including the referenced footnote, are legal conclusions to which no response is required. To the extent a response is required, these allegations are denied.

105. As a Christian with religious objections to receiving a COVID-19 vaccine, Mr. Morrison is a member of a protected class.

**Answer:** The allegations in Paragraph 105, including the referenced footnote, are legal conclusions to which no response is required. To the extent a response is required, these allegations are denied.

106. Mr. Morrison suffered adverse employment action when he was terminated for upholding his religious convictions.

**Answer:** Defendant denies the allegations in Paragraph 106.

107. As evidenced by his years' long exceptional performance records with Scripps, Mr. Morrison was qualified for his position. By any objective measure, Mr. Morrison was a valued and productive employee and his termination here was illogical. The Supreme Court has reiterated on several occasions that otherwise illogical employment decisions frequently give rise to an inference of discriminatory animus.[5]

**Answer:** Defendant denies the allegations in Paragraph 107, including the legal conclusions made in the referenced footnote.

108. On belief, Mr. Morrison was replaced by an employee outside the relevant protected class, an employee who did not possess religious objections to vaccination. Scripps replaced Mr.

---

[5] *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978) (in justifying the presumption of intentional discrimination in Title VII cases "that more often than not people do not act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. Thus, when all legitimate reasons for [an adverse employment action] have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with some reason, based his decision on an impermissible consideration. . . .").

27

Morrison with an employee outside the relevant protected class because it has no place in its workplace for employees with religious beliefs or practices similar to Mr. Morrison's.

**Answer:** Defendant denies the allegations in Paragraph 108 of the Complaint.

109.    Further, Scripps treated similarly situated secular employees who had been artificially immunized through vaccination more favorably than Mr. Morrison, who had religious objections to vaccination but who possessed stronger protection against COVID-19 through prior infection and recovery ("natural immunity").

**Answer:** Defendant denies the allegations in Paragraph 109 of the Complaint.

110.    Due to his natural immunity, Mr. Morrison was similarly situated to employees who kept their jobs. Scripps instituted an immunization policy and maintained that policy on "workplace safety" grounds.

**Answer:** Defendant denies the vague allegations in Paragraph 110 of the Complaint.

111.    Scripps's business records and other evidence demonstrates natural immunity was superior to vaccine-based immunity during the relevant period.

**Answer:** Defendant denies the vague allegations in Paragraph 111 of the Complaint.

112.    Naturally immune unvaccinated religious employees (like Mr. Morrison) were fired. In contrast, all artificially immunized employees kept their jobs, and safety protocols were relaxed for them, despite Scripps' knowledge they were contracting and transmitting COVID-19 during the relevant period.

**Answer:**  Defendant denies the vague allegations in Paragraph 112 of the Complaint.

113.    Unless Scripps' policy was to stick needles in employees' arms, and not actually workplace safety, employees with natural immunity were similarly situated to vaccinated, secular employees.

**Answer:** Defendant denies the vague, argumentative allegations in Paragraph 113 of the Complaint.

114. On belief, showing its preference for secular over religious, Scripps accommodated employees whose medical conditions precluded vaccination, while it refused to accommodate Mr. Morrison. These employees were similarly situated to Mr. Morris relative to the vaccine mandate.

**Answer:** Defendant denies the vague, argumentative allegations in Paragraph 114 of the Complaint.

115. Scripps did not terminate an appreciable number of unvaccinated employees—if any—who did not possess religious objections to vaccination and who failed to comply with the vaccination mandate. While universally applicable to all employees (in the abstract), the employees the vaccination mandate targeted in practice was religious employees, like Mr. Morrison. Scripps knew that this would be the case when it announced the vaccine requirement, and even more so when it terminated Mr. Morrison.

**Answer:** Defendant denies the vague, argumentative allegations in Paragraph 115 of the Complaint.

116. The circumstances surrounding Mr. Morrison's termination also give rise to an inference of religious discrimination, even if Scripps had not treated similarly situated secular employees more favorably and even if Scripps had not replaced Mr. Morris with an employee outside the protected class.

**Answer:** Defendant denies the allegations in Paragraph 116 of the Complaint.

117. When it terminated Mr. Morrison, Scripps knew the mandated vaccines were incapable of preventing infection and transmission and, at best, provided some undefined and hypothetical level of personal protection, which Mr. Morrison gladly declined in order to uphold his religious convictions. Thus, Scripps insisted that Mr. Morrison violate his religious beliefs to undergo a medical product that

could, at best, provide personal protection, and then fired him for declining that procedure, giving rise to a strong inference of religious discrimination. In short, Scripps was not concerned with workplace safety in Mr. Morrisson's situation—the company was intensely motivated to rid itself of employees with certain disfavored religious beliefs and practices, like Mr. Morrison's.

**Answer:** Defendant denies the allegations in Paragraph 117 of the Complaint. Defendant also specifically denies the false premise of the allegations that "vaccines were incapable of preventing infection and transmission and, at best, provided some undefined and hypothetical level of personal protection."

118. On belief, decision makers at Scripps who made the decisions regarding Mr. Morrison's religious accommodation and termination decision evinced a hostility to anyone who could not for religious reasons obtain the vaccine, including in communications to others, in their social media accounts, in their text messages to others, and in other forums.

**Answer:** Defendant denies the allegations in Paragraph 118 of the Complaint.

119. Scripps did not mandate that similarly situated secular employees who had been immunized artificially through vaccination comply with enhanced safety protocols, despite actual knowledge that they were contracting COVID-19 during the relevant timeframes at very high rates, particularly relative to unvaccinated religious employees who, like Mr. Morrison, possessed natural immunity against COVID-19.

**Answer:** Defendant denies the vague, argumentative allegations in Paragraph 119 of the Complaint. Defendant also states that Plaintiff's allegation of "similarly situated" employees is a legal conclusion to which no response is required and to the extent such a response is required, that allegation is denied.

120.    In contrast, Scripps fired Mr. Morrison, while knowing he was less of a workplace safety risk (relative to secular vaccinated employees) to the workforce due to his natural immunity and the fact that he was teleworking.

**Answer:** Defendant denies the allegations in Paragraph 120 of the Complaint.

121.    Regarding the distinction between safety protocols, Scripps distinguished between secular vaccinated employees and religious unvaccinated employees because it abhors employees who decline vaccination for religious reasons.

**Answer:** Defendant denies the allegations in Paragraph 121 of the Complaint.

122.    On information and belief, Scripps fired highly productive religious employees—during a labor shortage—for declining to take a vaccine it knew was incapable of preventing infection and transmission of the targeted pathogen, and, at best, provided an undefined level of personal protection (which Mr. Morris gladly declined to preserve his religious convictions).

**Answer:** Defendant denies the allegations in Paragraph 122 of the Complaint.

123.    Scripps fired full-time teleworkers with natural immunity and then justified its decision on patently inauthentic "workplace safety" grounds.

**Answer:** Defendant denies the allegations in Paragraph 123 of the Complaint.

124.    Scripps, counterintuitively, embraced the astronomical business costs associated with recruiting, re-hiring, and re-training Mr. Morrison's replacement or, alternatively, in re-apportioning his workload to others. The costs associated with replacing Mr. Morrison or re-apportioning his work load, radically outweighed any costs attributable to accommodating Mr. Morrison (which were minimal, at most).

**Answer:** Defendant denies the allegations in Paragraph 124 of the Complaint.

125.    Considering the foregoing, any legitimate non-discriminatory reason proffered by Scripps is pretext.

**Answer:** Defendant denies the allegations in Paragraph 125 of the Complaint.

126.    Again, Mr. Morrison was terminated because of his disfavored religious beliefs and practices.

**Answer:** Defendant denies the allegations in Paragraph 126 of the Complaint.

127.    The foregoing conduct constitutes illegal, intentional discrimination by Scripps, which was prohibited under 42 U.S.C. § 2000e-2 et seq.

**Answer:** Defendant denies the allegations in Paragraph 127 of the Complaint.

128.    As a direct and proximate result of Scripp's religious discrimination, Mr. Morrison is suffering the injuries and damages hereinafter described.

**Answer:** Defendant denies the allegations in Paragraph 128 of the Complaint.

129.    In addition to financial loss, Mr. Morrison has suffered medical, emotional and psychological harm from the months of uncertainty and repeated coercion to abandon his sincere religious beliefs in order to preserve her livelihood and career, and related to his unlawful termination.

**Answer:** Defendant denies the allegations in Paragraph 129 of the Complaint.

130.    On belief, numerous individuals specified to Scripps how the vaccination mandate and the company's handling of religious exemption and accommodation requests violated Title VII. Nonetheless, Scripps terminated Mr. Morrison and replaced him with an employee outside the relevant protected class, treated similarly situated employees outside the protected class more favorably, all under circumstances that give rise to an inference of religious discrimination. As such, Scripps knew terminating Mr. Morrison violate Title VII. Scripps' termination of Mr. Morrison, while he was a remote worker, and the circumstances surrounding his termination, demonstrated malice and/or reckless indifference to the federally protected rights of employees, warranting the imposition of punitive damages.

**Answer:** Defendant denies the allegations in Paragraph 130 of the Complaint.

131.     Mr. Morrison therefore seeks relief, pursuant to 42 U.S.C. § 2000e-5(f)(g), and (k), and 42 U.S.C. § 1981a, including relief for economic and non-economic compensatory damages and injunctive equitable relief. Specifically, Mr. Morrison seeks back pay, interest on backpay, and the value of back benefits, all through the date of trial; attorney fees to be determined by the lodestar method and calculated under prevailing *Rubin* rates; and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and punitive damages. All of the foregoing were actually and proximately caused by Scripps's violations of 42 U.S.C. 2000e-2.

**Answer:** Defendant states that the Complaint speaks for itself concerning what relief Plaintiff purports to seek and Defendant denies that Plaintiff has any viable causes of action or is entitled to any of the relief sought.  Any other allegations in Paragraph 131, if any, are denied.

## COUNT III – 42 USC 2000e-3 (retaliation)

132.     Plaintiff reincorporates the preceding paragraphs as if fully written herein.

**Answer:** Defendant incorporates its responses to Paragraphs 1 through 131 of Plaintiff's Complaint as if fully set forth herein.

133.     Mr. Morrison opposed a practice made illegal under 42 U.S.C. 2000e-2, when he challenged and opposed the mishandling of his religious exemption request on November 12, 2021.

**Answer:** Defendant states that Count III has been dismissed from this lawsuit pursuant to the Court's November 26, 2024 Order and therefore no response is required.  To the extent a response is required, the allegations in Paragraph 133 are denied.

134.     Scripps discriminated against Mr. Morrison, in contravention of 2 U.S.C. 2000e-3, when it terminated Mr. Morrison on December 3, 2021, just a few weeks after he sent the November 12, 2021 email that challenged and opposed Scripps handling of his religious accommodation request.

**Answer:** Defendant states that Count III has been dismissed from this lawsuit pursuant to the Court's November 26, 2024 Order and therefore not response is required. To the extent a response is required, the allegations in Paragraph 134 are denied.

135. In addition to terminating Mr. Morrison due to his disfavored religious beliefs, Scripps also terminated Mr. Morrison for opposing its' unlawful practices related to his religious exemption request.

**Answer:** Defendant states that Count III has been dismissed from this lawsuit pursuant to the Court's November 26, 2024 Order and therefore no response is required. To the extent a response is required, the allegations in Paragraph 135 are denied.

136. As a direct and proximate result of Scripp's retaliation against Mr. Morrison for engaging in protected activity, Mr. Morrison is suffering the injuries and damages hereinafter described.

**Answer:** Defendant states that Count III has been dismissed from this lawsuit pursuant to the Court's November 26, 2024 Order and therefore no response is required. To the extent a response is required, the allegations in Paragraph 136 are denied.

137. Scripps' termination of Mr. Morrison's employment immediately after he objected to how Scripps' handled his religious accommodation request demonstrated malice and/or reckless indifference to the federally protected rights of employees, warranting the imposition of punitive damages.

**Answer:** Defendant states that Count III has been dismissed from this lawsuit pursuant to the Court's November 26, 2024 Order and therefore no response is required. To the extent a response is required, the allegations in Paragraph 137 are denied.

138. Mr. Morrison therefore seeks relief, pursuant to 42 U.S.C. § 2000e-5(f)(g), and (k), and 42 U.S.C. § 1981a, including relief for economic and non-economic compensatory damages and

injunctive equitable relief. Specifically, Mr. Morrison seeks back pay, interest on backpay, and the value of back benefits, all through the date of trial; attorney fees to be determined by the lodestar method and calculated under prevailing *Rubin* rates; and emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses and punitive damages. All of the foregoing were actually and proximately caused by Scripps' violations of 42 U.S.C. 2000e-3.

**Answer:** Defendant states that Count III has been dismissed from this lawsuit pursuant to the Court's November 26, 2024 Order and therefore no response is required.  To the extent a response is required, the allegations in Paragraph 138 are denied.

**COUNT IV – R.C. 4112.01, et. seq. (religious discrimination/retaliation)**

139.    Plaintiff reincorporates the preceding paragraphs as if fully written herein.

**Answer:** Defendant incorporates its responses to Paragraphs 1 through 138 of Plaintiff's Complaint as if fully set forth herein.

140.    Scripps is, and was, at all times relevant hereto, an "employer" within the meaning and import of Ohio Revised Code ("R.C.") 4112.01(2), because it was a "person," which includes a company or corporation, employing four or more persons.

**Answer:** Defendant admits the allegations in Paragraph 140 of the Complaint.

141.    Mr. Morrison was, at all times relevant hereto, an "employee" within the meaning and import of R.C. 4112.01(3) because he was employed by Scripps.

**Answer:** Defendant admits the allegations in Paragraph 141 of the Complaint.

142.    Scripps violated R.C. 4112.02(A) when it discharged Mr. Morrison without just cause on December 3, 2021, and because of his religion and the failure by Scripps to accommodate same.

**Answer:**  Defendant denies the allegations in Paragraph 142 of the Complaint.

143.     Scripps violated R.C. 4112.02(I) when it discharged Mr. Morrison without just cause on December 3, 2021, after he opposed and challenged Scripps illegal failure to accommodate his religious beliefs.

**Answer:** Defendant admits the allegations in Paragraph 143 of the Complaint.

144.     Mr. Morrison brings an action pursuant to R.C. 4112.052 for the violations by Scripps of R.C. 4112.02(B) and (I), and has satisfied all prerequisites required by that section because he filed timely charges with the equal opportunity employment commission, which also had the effect of constituting a timely charge with the Ohio Civil Rights commission, and this action has been brought within the time period required under the 90-day right to sue notice.

**Answer:**  Defendant admits that Plaintiff seeks to bring an action under the referenced statute but denies he is entitled to any and all relief.

145.     Mr. Morrison therefore seeks relief, pursuant to R.C. 4112.052, including relief for economic damages proximately and actually caused by the foregoing, to include back pay, interest on backpay, and the value of back benefits, all through the date of trial, as well as future lost wages; non-economic damages, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life.

**Answer:**  Defendant states that the Complaint speaks for itself concerning what relief Plaintiff purports to seek and Defendant denies that Plaintiff has any viable causes of action or is entitled to any of the relief sought.  Any other allegations in Paragraph 145, if any, are denied.

146.     Scripps actions herein demonstrate malice or aggravated or egregious fraud (including due to its pretextual and absurd contentions in defense of its illegal firing before the EEOC), and Scripps knowingly authorized, participated in, or ratified actions or omissions of an agent or servant that so demonstrate, thus warranting punitive damages.

**Answer:** Defendant denies the allegations in Paragraph 146 of the Complaint.

147.    Mr. Morrison seeks punitive damages in an amount to be determined by the jury at trial.

**Answer:** Defendant states that the Complaint speaks for itself concerning what relief Plaintiff purports to seek and Defendant denies that Plaintiff has any viable causes of action or is entitled to any of the relief sought.  Any other allegations in Paragraph 147, if any, are denied.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as prayed for, including:

A.  That Plaintiff be awarded money damages, including both compensatory and punitive damages against the Defendants, in an amount to be proven at trial, and exceeding $75,000.00, exclusive of interest and costs;

B.  That trial by jury be had on all issues so triable;

C.  Issue a permanent injunction requiring Scripps to expunge Mr. Morrison's personnel files of any derogatory, false, or misleading information relating to this matter.

D.  Order Scripps to provide training for supervisors and managers at all corporate levels specific to Title VII religious discrimination.

E.  That Plaintiff be awarded their costs in this action, including reasonable attorney fees;

F.  That Plaintiff be awarded all appropriate injunctive and equitable relief against the Defendant, as this Court may find just and proper; and

G.  Such other relief as this Court shall deem just and proper.

**Answer:**   Defendant denies all allegations in the unnumbered Paragraph beginning with "WHEREFORE," including sub parts A-G.  Defendant further denies any other allegations not otherwise specifically addressed in this Answer including but not limited to those made by Plaintiff in any heading, unnumbered paragraph, or footnote.

## ADDITIONAL DEFENSES

### First Defense

148.     Plaintiff's Complaint, in whole and/or in part, fails to state a claim against Defendant upon which relief may be granted.

### Second Defense

149.     Plaintiff's claims are barred to the extent he has failed to satisfy and/or exhaust any and all administrative, jurisdictional, and/or procedural prerequisites to suit.

### Third Defense

150.     Plaintiff's claims are barred because permitting him to not comply with the Defendant's policy would have resulted in undue hardship.

### Fourth Defense

151.     Plaintiff's claims must fail to the extent they are untimely and/or barred by the applicable filing deadlines or statutes of limitation.

### Fifth Defense

152.     The decisions relating to Plaintiff's employment were based on permissible, legitimate, and lawful factors unrelated to his legal rights under federal or state law.

### Sixth Defense

153.     The decisions relating to Plaintiff's employment were non-discriminatory and based upon legitimate reasons and carried out in the good-faith exercise of Defendant's business judgment.

### Seventh Defense

154.     There is no causal connection between the alleged acts of Defendant and the alleged injuries or damages suffered by Plaintiff.

**Eighth Defense**

155.　Plaintiff is barred from recovery against Defendant because the damages and injuries, if any, of which Plaintiff complains are solely and proximately caused by the negligent or wrongful acts of Plaintiff.

**Ninth Defense**

156.　To the extent Plaintiff failed to mitigate his alleged damages, he is barred from recovery, or, in the alternative, his damages are reduced.

**Tenth Defense**

157.　Plaintiff is not entitled to recover any punitive damages because Plaintiff has not set forth, and cannot set forth, facts sufficient to support a claim under law for such damages, and any employee of Defendant who engaged in conduct with respect to Plaintiff as alleged in the Complaint, which Defendant specifically denies, lacked sufficient authority to subject Defendant to punitive damages.

**Eleventh Defense**

158.　Any claim by Plaintiff for punitive damages is barred, in whole or in part, by the provisions of the U.S. Constitution and the Ohio Constitution.

**Twelfth Defense**

159.　Plaintiff's alleged damages must be set-off and/or reduced by any wages, compensation, and any other remuneration or benefits he has received.

**Thirteenth Defense**

160.　Defendant has in place policies against discrimination and retaliation, which provide reasonable, effective, and available procedure(s) for handling complaints thereof, and which provide for prompt and effective responsive action. Plaintiff's claims are barred because

he unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendant or to otherwise avoid harm, which Defendant specifically denies occurred.

**Fourteenth Defense**

161. Plaintiff's damages, if any, may be offset in whole or in part by the doctrine of after-acquired evidence.

**Fifteenth Defense**

162. Defendant reserves the right to assert additional defenses, as they come to light through investigation, discovery or otherwise.

WHEREFORE, having fully Answered, Defendant prays that Plaintiff's Second Amended Complaint be dismissed with prejudice and that Defendant be granted costs, expenses, and reasonable attorneys' fees.

This ____ day of December, 2024.

Respectfully submitted,

*/s/ M. Scott McIntyre*
M. Scott McIntyre-trial attorney (OH 0075298)
Sean P. Ryan (OH 94085)
BAKER & HOSTETLER LLP
312 Walnut Street, Suite 3200
Cincinnati OH 45202-4074
Telephone: 513.852.2622
Facsimile: 513.929.0303
Email: smcintyre@bakerlaw.com
*Attorney for Defendant*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed with the Court via the

CM/ECF system, which will send notice to the following counsel of record:

Christopher Wiest (Ohio 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
chris@cwiestlaw.com

Walker Moller
SIRI | GLIMSTAD LLP
1005 Congress Avenue, Suite 925-C36
Austin, TX 78701
wmoller@sirillp.com

Jack Spitz
SIRI | GLIMSTAD LLP
8 Campus Drive, Suite 105 PMB#161
Parsippany, New Jersey 07054
Main: 212-532-1091
Facsimile: 646-417-5967

*Attorneys for Plaintiff*

*/s/ M. Scott McIntyre*
M. Scott McIntyre (OH0075298)